IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| VICTORIA CROMWELL JOHNSON, ]<br>on behalf of herself and as mother and ]<br>next friend of the minor ]<br>DAVID CROMWELL JOHNSON, JR., ]<br> ]<br>   Plaintiff, ]<br> ]<br>v.                                            ]<br> ]<br>NORTHWESTERN MUTUAL LIFE ]<br>INSURANCE COMPANY, ]<br> ]<br>   Defendant.                           ] | CV-05-BE-1723-S |

**MEMORANDUM OPINION**

This matter comes before the court on the Motion for Summary Judgment filed by Defendant Northwestern Mutual Life Insurance Company (doc. 35), Defendant's Motion to Exclude Plaintiff's Expert (doc. 38), and Defendant's Motion to Strike Exhibit (doc. 48). All motions have been fully briefed by both sides. For the reasons stated below, the Motion for Summary Judgment is GRANTED and judgment is entered in favor of the Defendant. The Motion to Exclude Plaintiff's Expert and the Motion to Strike are MOOT.

OVERVIEW

Plaintiff Victoria Cromwell Johnson sues on behalf of herself and her minor son David Cromwell Johnson, Jr. to recover proceeds on life insurance policies that covered the life of her estranged husband David Cromwell Johnson, Sr. Vicky Johnson asserts claims of breach of contract, bad faith, negligence, wantonness, and unjust enrichment. According to Defendant

Northwestern, Mr. Johnson had allowed certain of his life insurance policies to lapse, and Vicky Johnson received all the proceeds to which she was entitled on the remaining, non-lapsed policies at the time of Mr. Johnson's death.

This dispute arises at least in part because when Mr. Johnson divorced his first wife, Kathleen, the divorce decree required Mr. Johnson to maintain one million dollars of life insurance, with Kathleen and her daughters as beneficiaries. During the last years of his life, Mr. Johnson took out a number of life insurance policies, variously naming as beneficiaries his first wife, Kathleen; his children from first marriage; his second wife, Vicky Johnson; and his son from his second marriage.

At the time of Mr. Johnson's death on January 2, 2003, he and Vicky were engaged in divorce proceedings. Northwestern paid Vicky Johnson approximately $642,000 and paid her son approximately $141,000 under the two life insurance policies that remained in force at Mr. Johnson's death. Kathleen Johnson then filed suit claiming she was entitled to proceeds as a result of her divorce decree, and Northwestern settled her claim on a confidential basis. Subsequent to that settlement, Vicky Johnson filed this lawsuit claiming benefits under life insurance policies that had not been paid because, according to Northwestern, they had lapsed prior to Mr. Johnson's death.

This case presents a relatively straightforward issue: whether Defendant Northwestern Mutual Insurance Company owes Plaintiff Vicky Johnson and her son any money under Mr. Johnson's life insurance policies that, according to Northwestern, lapsed months prior to his death. As discussed in detail below, the court finds that the policies had in fact lapsed, that no other funds were available to Northwestern for the payment of the premiums on the lapsed

policies, and that Northwestern paid Mrs. Johnson all the proceeds to which she and her son were entitled.

This court has jurisdiction pursuant to 28 U.S.C. § 1332.

MOTION TO EXCLUDE

The Defendant seeks to exclude from evidence in this case the testimony of John Allen, offered by Plaintiff as an expert. The Defendant challenges Allen's qualifications regarding life insurance and argues that his testimony is inadmissable under Federal Rules of Evidence 702. Although Allen worked in the insurance industry for fourteen years and has been a litigation consultant for approximately thirteen years, he never handled any life insurance matters. He has never testified in a life insurance case or written articles regarding life insurance.

The Plaintiff counters with facts to buttress Allen's credentials and argues that the *Daubert* analysis urged by Defendant "is not implicated here because Mr. Allen's opinions are primarily based on his experience in the insurance industry and not on a particular methodology or technique. Instead, only a traditional admissibility inquiry under Fed. R. Evid. 702 should be exercised." Plaintiff's Response, p. 2 (doc. 44).

For the reasons stated below, the court need not address *Daubert's* applicability to the challenge to Plaintiff's expert in this case. At this stage, the court does not need to decide whether the testimony of Plaintiff's expert should be admitted at trial under Fed. R. Evid. 702. That Rule addresses expert testimony for the benefit of the jury. At summary judgment stage, the court should consider whether the expert's testimony assists the court. The opinions offered by Allen deal with legal issues and industry standards, and whether Northwestern Mutual missed those standards in the handling of the claims that underlie this suit.

The Plaintiff relies on Judge Acker's assessment of Allen's expertise in a case in which Allen was named as a defendant in a declaratory judgment action: *Nationwide Mutual Fire Ins. Co. v. Allen*, CV-00-AR-1662-S, Mem. Op. Sept. 25, 2001 (doc. 67).  In that case, Judge Acker acknowledged that

> Allen is a sophisticated insurance man.  He has been an expert witness on matters of insurance coverage.  He knows more than the average lawyer about declaratory judgments actions regarding insurance coverage.

*Id*. at 6-7.[1]  Judge Acker went on to state that he was <u>not</u> relying on Allen as an expert on the coverage issues involved in that case:  "The court does not need an expert on liability insurance practice and procedure in Alabama, except the expertise of the appellate courts of Alabama." *Id*. at 7.

Likewise, this court does not need an expert about the issues in this case concerning life insurance matters, except the decisions of the Alabama appellate courts.  The court, therefore, has not relied on any of the submissions of Allen's testimony, either by affidavit or deposition.  Because of the court's decision to grant summary judgment in favor of the Defendant Northwestern Mutual, it need not address the issue of whether Allen's opinions would be admissible at trial as an expert witness on the life insurance matters at issue in this case.  The motions to exclude and to strike are, therefore, MOOT.

---

[1] *Nationwide v. Allen* involved a declaratory judgment action by two insurers seeking a declaration that they had no duty to defend or indemnify Allen under liability insurance policies in two civil actions pending against him.  Allen defended himself *pro se*.  Thus, Judge Acker's assessment about Allen's "sophistication" about insurance matters related to questions of liability insurance – not life insurance.

STANDARD OF REVIEW FOR SUMMARY JUDGMENT

When a district court reviews a motion for summary judgment under Federal Rule of Civil Procedure 56, it must determine two things: (1) whether any genuine issues of material fact exist; and, if not, (2) whether the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56 (c). To succeed, the moving party bears the burden of establishing *both* prongs of the summary judgment test. The nonmoving party may defeat the motion for summary judgment by establishing *either* genuine issues of material fact *or* that the *movant* is not entitled to judgment as a matter of law.

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986) (quoting Fed. R. Civ. P. 56). The party seeking summary judgment can meet this burden by offering evidence showing no dispute of material fact, or by showing that the nonmoving party's evidence fails to meet some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23. Rule 56, however, does not require "that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." 477 U.S. at 323.

When the moving party has met its burden, Rule 56 (e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56 (e)). The responding party

does not need to present evidence in a form admissible at trial; however, she may not merely rest on her pleadings.  477 U.S. at 324.  "[T]he plain language of Rule 56 (c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  In such a situation, there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  *Celotex*, 477 U.S. at 322-323.

In responding to a properly-supported motion for summary judgment, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material fact."  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986).  If the evidence is "merely colorable, or is not significantly probative, summary judgment may be granted."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 , 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986) (citations omitted); *accord Spence v. Zimmerman*, 873 F.2d 256 (11th Cir. 1989).

In reviewing the evidence submitted, the court must "view the evidence presented through the prism of the substantive evidentiary burden," to determine whether the nonmoving party presented sufficient evidence on which the jury could reasonably find for the nonmovant.  *Anderson*, 477 U.S. at 254; *Cottle v. Storer Communication, Inc.*, 849 F.2d 570, 575 (11th Cir. 1998).  The court should not weigh the evidence, nor make determinations as to the credibility of witnesses because these decisions fall to the province of the jury.  *See Anderson*, 477 U.S. at 255; *Stewart v. Booker T. Washington Ins. Co.*, 232 F.3d 844, 848 (11th Cir. 2000);  *Graham v. State*

*Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999).   Thus, "the evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in [its] favor." *Anderson*, 477 U.S. at 255.  However, "[t]he nonmovant need not be given the benefit of every inference but only of every reasonable inference." *Graham*, 193 F.3d at 1282 (quoting *Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n. 12 (11th Cir. 1988)). After both parties have addressed the motion for summary judgment, the court must grant the motion if no genuine issues of material fact exist *and if* the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56 (c).

## FACTUAL BACKGROUND

Both sides submitted extensive undisputed and disputed facts, many of which are immaterial and  irrelevant to the questions before the court.  For the purpose of this summary judgment motion, the court finds the following facts are undisputed.  In making these findings of fact, the court has viewed the facts in the light most favorable to the Plaintiff, the non-moving party.

Mr. Johnson divorced his first wife Kathleen in 1986.  Their divorce decree required Mr. Johnson to maintain one million dollars in insurance on his life with Kathleen and their two daughters as beneficiaries, but did not designate a specific policy or insurer.

In 1988, Johnson married his second wife Vicky, and they had a son Cromwell in 1989. That same year, Mr. Johnson purchased two term policies, the "11-series policies," from Northwestern, which provided $4.35 million in death benefits.  Mr. Johnson designated Kathleen and his daughters as the beneficiaries of the first million in coverage pursuant to the divorce decree, and Vicky and her son as beneficiaries of the remaining benefits.  In 1992, Mr. Johnson

converted portions of the 11-series term policies to two whole life policies, the "12-series policies." In October 2001, Mr. Johnson converted the remainder of the 11-series policies to two whole life policies with adjustable term protection, the "15-series policies." Mr. Johnson, as owner and payor for both policies, did not instruct Northwestern to send notices to anyone other than himself. He designated Kathleen and her daughters as beneficiaries of the first million dollars of benefits under both of the 15-series policies, with Vicky as the remainder beneficiary of one policy and Cromwell as the remainder beneficiary of the second policy.

The premiums for the two 15-series policies totaled approximately $76,000 per year. Mr. Johnson made monthly premium payments on these policies through an Insurance Service Account ("ISA").[2] Mr. Johnson made electronic transfers into the ISA for the first three monthly premiums after the 15-series policies were issued. Mr. Johnson did not make the February 2002 electronic transfer for payment of premiums.

In February 2002, Mrs. Johnson filed for divorce. Also in February, Northwestern sent Mr. Johnson, the owner of the policies, notice that the February payment had been dishonored and that two month's premiums would be due on the 15-series policies in March. Mrs. Johnson intercepted and opened that notice, and then gave it to her attorney.

---

[2] Mrs. Johnson contends that Mr. Johnson made an annual premium payment based on internal records of Northwestern and that it, therefore, erroneously treated the policies as lapsed before the expiration of the first year. Although the court must view all evidence in the light most favorable to the Plaintiff, it does not have to suspend all reason and accept as true every dispute in fact raised by the Plaintiff. *See Matsushita Elec. Ind. Co. v. Zenith Radio Corp.* 475 U.S. 574, 587 (1986). The court finds the Plaintiff's argument as to the meaning of the internal records flies in the face of all reasonable inferences. As discussed *infra,* had Mr. Johnson actually paid an annual premium, he would not have taken a loan from other policies to pay quarterly premiums in the spring of 2002, as the Plaintiff admits Mr. Johnson did.

On April 1, 2002, Mr. Johnson elected to fund a quarterly premium payment[3] on the 15-series policies by taking a policy loan from one of the 12-series policies. Mr. Johnson completed the loan application and instructed Northwestern to use the proceeds to pay premiums on the 15-series policies. In May 2002, Johnson funded another quarterly premium on the 15-series policies by taking additional policy loan on the 12-series policies. He again completed the necessary loan application and instructed Northwestern to use the loan proceeds to pay the premiums on the 15-series policies. This payment funded the policies through August 23, 2002. Mr. Johnson made no further payments on the 15-series policies, despite notices from Northwestern that the policies would and had lapsed as of August 23, 2002.

In September and October, Mr. Johnson's divorce attorney communicated with Mrs. Johnson's attorney about reducing the amount of life insurance. On October 22, 2002, Mr. Johnson named Vicky Johnson and her son as beneficiaries of $750,000 of the proceeds of one of the 12-series policies, eliminating Kathleen and his daughters as beneficiaries of that policy.

Mr. Johnson died on January 3, 2003. After receiving notice of his death, Northwestern paid the proceeds of one of the 12-series policies equally to Mr. Johnson's three children pursuant to his last beneficiary designation. Kathleen and Vicky made competing claims to the other 12-series policy. Northwestern paid the disputed proceeds to Vicky Johnson and forwarded her attorney a check in the amount of $642,126.44 on April 8, 2003.[4]

---

[3] This quarterly premium payment covered the past-due premium payment for February and March, as well as the April premium payment.

[4] The $750,000 benefit amount had been reduced by the policy loans for the premium payments on the 15-series policies in the spring of 2002.

DISCUSSION

In her complaint, Mrs. Johnson asserts that Northwestern failed to pay death benefits to her on the 15-series policies, and that it failed to notify her that Mr. Johnson had allowed two of his Northwestern policies to lapse for non-payment of premiums. In her reply to Northwestern's motion, Mrs. Johnson does not argue that Northwestern had any duty to notify her of the failure to pay premiums and the resultant lapse. Indeed, she has no legal basis for such a position. The law is clear that where the owner of an insurance policy has the right to change beneficiaries, the beneficiary has no vested right or interest in the policy. *Stephen v. Westbrook*, 244 So. 2d 569, 572 (Ala. 1971). The law of Alabama has long recognized that an insurance company has no duty to provide notice of the lapse of the policy absent contractual or other arrangements. *Ala. Nat'l Life Ins. Co. v. Smith*, 108 So. 524, 525 (Ala. 1926).

Instead, Mrs. Johnson presents the novel arguments that Northwestern failed in its "duty" to use available funds to pay premiums on the 15-series policies, that Northwestern failed to follow its "duty" under the divorce decree between Mr. Johnson and his first wife Kathleen, and that Northwestern failed to properly investigate the coverage available. Although in her complaint the Plaintiff appears to assert claims for breach of contract, bad faith, negligence, wantonness, and unjust enrichment, the only place in her brief where the Plaintiff identifies any of her claims for recovery is in the penultimate paragraph in which she references her claim for unjust enrichment. Two of her headings are couched in terms of "duty" indicating perhaps a reference to her negligence claim. The court, thus, has to construe her arguments as best it can in relation to the claims she asserted in her complaint – breach of contract, negligence, wantonness, bad faith, and unjust enrichment.

1. "Duty" to Use Available Funds

Although Mrs. Johnson cites general horn book law for the proposition that the law disfavors forfeitures[5], she cites no authority for her theory that Northwestern had some duty by the terms of the policies or at law to seek out and use any other funds to pay premiums on the 15-series policies.  Mrs. Johnson claims that the 15-series policies should not have lapsed because Mr. Johnson had made an annual payment when purchasing the policies, that the cash value of the 15-series policies should have been used to pay premiums, and that Northwestern should have used the cash value of the 12-series policies to pay premiums on the 15-series policies.  All three theories must fail – whether as a basis for breach of contract or negligence – because they are not supported by the facts, the contractual terms of the policy, or law.

     a.  Annual Premium Theory

Mrs. Johnson points to internal record keeping entries concerning Mr. Johnson's ISA account for premium payments as evidence that Mr. Johnson paid an annual premium in October 2001 and that "credits" were available on those policies.  Under her theory, the policies should not have been treated as lapsed by Northwestern.  Plaintiff attempts to create a genuine issue of material fact by refusing to accept the Defendant's explanation of its internal records.[6]  Her argument makes no sense and thus need not be accepted by the court.  If Johnson had made an

---

[5] *See Couch on Insurance* §§ 22:30 *et seq.* (3d Ed. 1996).

[6] Plaintiff relies on the application on which the annual premium box is checked. However, the application does not contain a box for checking monthly payment of premiums. Monthly payments can only be made by setting up an Insurance Service Account ("ISA") through which monthly premium payments would be automatically withdrawn from his checking account.  The application also had the "ISA" box checked.  The application shows receipt of approximately $6,600 as payment of monthly premiums on the two policies – *NOT* the $76,000 annual premium.

annual premium in October 2001, then he would not have borrowed from the other policies, thereby reducing their value, to make two quarterly payments in April and May of 2002 on the 15-series.  Mrs. Johnson offered no proof, such as a cancelled check or a bank statement, to support her allegation.  In short, she offers nothing but speculation.  That Mr. Johnson made monthly premium payments is consistent with the other facts, while Plaintiff's theory of an annual premium payment is inconsistent with the other undisputed facts in this case.  Although the court must view the facts in the light most favorable to the non-movant, the court does not need to accept facts that are implausible.  See *In Re Fin. Federated Title & Trust*, 347 F.3d 880, 885 (11th Cir. 2003), (*citing Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  Therefore, the court finds that the Plaintiff failed to present plausible evidence or even a reasonable inference that the insured made an annual premium payment in October 2001, or any plausible evidence to support her theory that the 15-series policies did not lapse prior to Mr. Johnson's death.

   b.  Cash Value Theory

The Plaintiff agues that the 15-series policies provided for extended term insurance upon lapse of a policy.  She cites to a policy provision that does refer to extended term coverage[7] and claims that cash value was available to pay the premiums on those policies.  The Plaintiff,

---

[7] Section 7.2 of the 15-series policies provides:
If any premium is unpaid at the end of the grace period, this policy will be in force as extended term insurance.  The amount of death proceeds under this term insurance will be: the Basic Amount shown on page 3; plus the amount of Adjustable Term Protection then in force under Section 3; plus the amount of any paid-up additions in force under Section 6.3; plus the amount of any dividend accumulations (Section 5.2); *less the amount of any policy debt* (Section 8.3).  These amounts will be determined as of the due date of the unpaid premium.... (emphasis added).

however, ignores the clear language in the "Policies and Illustrations" section of the policy that the policies will have no cash value until <u>after</u> the first year.  *See* Def. Ex. 4, at page NM 1026.  The 15-series policies were issued in October of 2001, and, therefore, had no cash value or paid up term coverage when the policies lapsed for non-payment on August 23, 2002.

Alabama law supports Northwest Mutual's position that, because the policy had not accrued any cash value, no funds existed in the 15-series policy with which to keep the policy in force.  *See Allstate Life Ins. Co. v. Stephens*, 333 So. 2d 777 (Ala. 1976) (no cash value in policy when it lapsed to use to pay premium); *Alabama Nat. Life Ins. Co. v. Smith*, 108 So. 524, 525 (Ala. 1926) (policy loan depleted loan value of policy so nothing left with which to pay premium or purchase extended insurance).  Similarly in this case, the 15-series policies acquired no cash value with which to maintain insurance upon Mr. Johnson's failure to pay premiums.

   c.  "Other Money" Theory

Mrs. Johnson argues that Northwestern had a legal duty to use cash value contained in Johnson's *12-series policies* to pay premiums on the *15-series policies*, even though Mr. Johnson had not authorized Northwestern to do so.  Mrs. Johnson cites no policy provisions, or any legal authority to support her argument that Northwestern had any such duty by law or by contractual provision.  Instead, the contractual language of the policy clearly gives the <u>owner</u> of the policy, Mr. Johnson, the right to request a policy loan of cash value.  Mr. Johnson knew how to make such a request, as he did so to cover two quarterly payments.  Had he desired to use the cash value of the 12-series to cover the quarterly payments of premiums for the 15-series policies, he and he alone could have done so.  Had Northwestern acted unilaterally in applying the cash value of the 12-series policies to the premiums due on the 15-series policies, without any contractual or

legal authorization, it would have breached its contractual agreement with Mr. Johnson. Because loans of cash value reduce the death benefits, had Northwestern done as Mrs. Johnson now argues it should, she would have had a legally sustainable claim, as a third-party beneficiary to the contract, against Northwestern for reducing the death benefits without authority from the owner of the policy to do so.

    2. "Duty" Under the Divorce Decree

Mrs. Johnson argues that Northwestern was aware of the divorce decree between David Johnson and Kathleen Johnson that required Mr. Johnson to maintain one million dollars of coverage for the benefit of Kathleen and her daughters, and that such knowledge made them "irrevocable" beneficiaries of the 15-series policies. She argues that, as irrevocable beneficiaries, Kathleen and her daughters should have received notice of the non-payment of premiums. While acknowledging that she and her son were *not* irrevocable beneficiaries, she argues that they were direct beneficiaries of the 15-series policies that were "tied" to a divorce decree and, therefore, were entitled to the "special handling" due the irrevocable beneficiaries. Again, Mrs. Johnson cites no authority – contractual or legal – for her novel theory.

The court agrees with Plaintiff that Kathleen Johnson and her daughters became irrevocable beneficiaries by virtue of the divorce decree that mandated Mr. Johnson to maintain life insurance for their benefit. Under Alabama law, when a divorce decree requires one ex-spouse to carry life insurance for the benefit of the other ex-spouse and/or children, the divorce decree creates a vested equitable interest in the life insurance policy that the insured cannot defeat by naming someone else as beneficiary. *Hanner v. Metro Bank*, 2006 Ala. LEXIS 250, at *4-6 (Ala. September 15, 2006); *Brown v. Brown*, 604 So. 2d 365 (Ala. 1992); *McKinnis v.*

*McKinnis*, 564 So. 2d 451, 453 (Ala. Civ. App. 1990); *Posey v. The Prudential Ins. Co. of Am.*, 383 So. 2d 849, 850-51 (Ala. Civ. App. 1980); *Williams v. Williams*, 276 Ala. 43, 158 So. 2d 901, 903 (1963).

This equitable rule creates an exception to the general principle of insurance law that a beneficiary to a life insurance policy that contains a provision allowing the insured to change the beneficiary "has only an expectancy but no vested right until loss occurs." *Jenkins v. Lovelady*, 290 Ala. 25, 273 So. 2d 189, 194 (1973) (citations omitted); *Stephen v. Westbrook*, 286 Ala. 620, 244 So. 2d 569, 572 (1971).[8]  When an insured does violate the mandate of the divorce decree, equity intervenes to declare the protected ex-spouse and/or children to be the beneficiaries of the policy. *Posey*, 383 So. 2d at 851 (citing *Williams*, 158 So. 2d at 903).  In cases where the insurance company pays the proceeds to the designated beneficiary contrary to the rights of a holder of the vested equitable interest, Alabama courts, based on these equitable principles, impose a constructive trust on the proceeds of the designated policy or its replacement. *Brown*, 604 So. 2d at 368-369 (affirming the imposition of a constructive trust on the proceeds of replacement policies); *cf*. *Berryman v. Adams*, 883 So. 2d 214, 219 (Ala. Civ. App. 2003) (reversing the imposition of a constructive trust where the evidence was insufficient to establish that a subsequent policy, paid for by the new spouse, was a replacement for the policy referenced in the divorce decree that the insured had allowed to lapse).

These equitable principles, designed to effectuate provisions in divorce decrees or settlement agreements, would provide grounds for *Kathleen* to assert her rights, and those of her

---

[8] Without such divorce decree or other contractual arrangement, the designation and change of beneficiaries is a right reserved to the owner of the policy. *See Zeigler v Cardona*, 830 F. Supp. 1395 (M.D. Ala. 1993).

daughters, to the proceeds of the policies existent at Mr. Johnson's death, *i.e.*, the 12-series policies.  These principles, however, provide no protection for *Vicky* to the 15-series policies that had lapsed prior to Mr. Johnson's death.

Mrs. Johnson cites nothing to support her claim that she had anything more than an expectancy as beneficiary with no rights to policy benefits during the lifetime of Mr. Johnson.  Vicky Johnson was not party to the divorce decree between David Johnson and Kathleen, and could not be viewed as a third party beneficiary to that decree.  The provisions in the Northwestern "divorce manual" do not apply to Vicky Johnson's claims because no divorce decree had been entered requiring Mr. Johnson to maintain a specific policy or coverage on her behalf.  The Plaintiff has simply failed to show that any "special handling" that may or may not have been due Kathleen would in anyway inure to her benefit.  Again, the Plaintiff fails to establish any basis in the insurance contract or in the law for her theory of recovery and it must fall.

    3.  "Failure" to Properly Investigate

Although the Plaintiff's complaint spoke in terms of bad faith failure to pay the insurance proceeds of the 15-series policies, in her reply brief, the Plaintiff argued that Northwestern failed to properly investigate to determine whether the policies had lapsed.  Although she did not couch her one-paragraph argument of this point in terms of her bad faith claim, the court presumes that such was the Plaintiff's intent because nowhere else in her brief did she suggest any basis for a bad faith claim.

Alabama law recognizes two types of bad faith claims against insurance carriers:  (1) the "ordinary" bad faith failure to pay a claim; and (2) the "abnormal" bad faith failure to investigate.

*Employers' Benefit Ass'n v. Grissett*, 732 So. 2d 968, 976 (Ala. 1998). Breach of contract, that is, liability under the contract, is a prerequisite for recovery under either theory. *Id.*; *see also Brooks v. J. C. Penny Life Ins. Co.*, 231 F. Supp. 2d 1136, 1144 (N.D. Ala. 2002) (listing breach of an insurance contract as an element of bad faith failure to pay); *Congress Life Ins. Co. v. Barstow*, 799 So. 2d 931, 936-37 (Ala. 2001) (listing breach of contract as an element for abnormal bad faith failure to investigate).

As discussed above, the Plaintiff failed to establish any grounds by which she is entitled to recover under the 15-series insurance policies at issue here. Having failed to establish any breach of contract, her claim for bad faith of either type must also fail.

Even if she did not have to prove a breach of contract to proceed on a failure to investigate theory, or if her argument of a failure to investigate were somehow linked to a breach of contract claim, she failed to establish that Northwestern did not conduct a proper investigation. She alleges that Northwestern did not follow up on the possibility that Mr. Johnson might have been mentally unstable for some period of time prior to his death, implicating waiver of premium benefit. However, Northwestern, at the request of Mr. Johnson's insurance agent, sent the administrator of his estate a waiver of premiums application, seeking information regarding an alleged disability. Despite several follow up letters from Northwestern to the estate, the estate never submitted the requested information to Northwestern. Thus, Northwestern had no waiver issue to investigate and, therefore, could not have failed to properly investigate it.

If Plaintiff's bad faith theory is that Northwestern failed to properly investigate her claim to proceeds under the 15-series policies, that claim must also fail. Northwestern relied on its computer system that showed that the 15-series policies had lapsed. Plaintiff has presented no

evidence that the system was unreliable and no authority that Northwestern had any duty to go further in any investigation to conclude the policies had in fact lapsed. Further, the computer system reflected accurate information: the 15-series policies had lapsed.

Thus, whether the allegation that Northwestern failed to properly investigate is one for bad faith, breach of contract, or negligence, Plaintiff failed to show that Northwestern's investigation was lacking or improper, or that it had a duty – contractual or at law – to do more than it did.

### 4. Unjust Enrichment

Plaintiff in her complaint asserts a claim for unjust enrichment, presumably because Northwestern received premiums and did not pay proceeds for the 15-series policies. To prevail on a claim for unjust enrichment, a plaintiff must show that the "'the defendant holds money which, in equity and good conscience, belongs to the plaintiff or holds money which was improperly paid to defendant because of mistake or fraud.'" *Dickinson v. Cosmos Bread Co.*, 782 So. 2d 260, 266 (Ala. 2000) (quoting *Hancock -Hazlett Gen. Constr. Co. v. Trane Co.*, 499 So. 2d 1385, 1387 (Ala. 1986)).

As shown previously, the 15-series policies lapsed for non-payment under the terms of the policies because Mr. Johnson failed to make premium payments. No monies were due as proceeds because the contractual terms for payment had not been met by Mr. Johnson. Northwestern paid out all the proceeds of the policies that were in effect at the time of Mr. Johnson's death. It owes no money to Plaintiff nor does it hold any money that was paid to it by mistake or fraud. Therefore, the Plaintiff's claim of unjust enrichment fails as a matter of law.

Although the Plaintiff's Reply to the Defendant's Motion for Summary Judgment asserts

numerous "disputed facts," those facts were irrelevant or distorted and need not be viewed by the court as genuine issues of material fact.  As the Eleventh Circuit has recently reiterated, "'[m]ere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Smith v. Federal Express Corp.*, 2006 U.S. App. LEXIS 1760, at *3 (11th Cir. July 17, 2006) (quoting *Ellis v. England,* 432 F.3d 1321, 1326 (11th Cir. 2005)).  Further, when the Plaintiff's proof fails to establish the existence of an essential element of her case, other disputed facts become immaterial and cannot be used to defeat summary judgment.  *See Celotex*, 477 U.S. at 323.  Therefore, the court concludes that no genuine issue of material fact exists, that the 15-series policies had lapsed prior to Mr. Johnson's death, and that Northwestern Mutual is entitled to judgment as a matter of law that it owes nothing to the Plaintiff under any theory of recovery.  A separate order will be entered awarding judgment to the Defendant.

    Dated this 31st day of October 2006.

_____
KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE